IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| STELLA ADAOBI OBIOHA, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-18-4012 |
| MATTHEW G. WHITAKER et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Dr. Stella Adaobi Obioha, an immigrant from Nigeria, has lived in the United States for more than 30 years, remaining in the country long after an immigration judge ordered her removal. In August 2018, following years of efforts to stave off her deportation, she urged U.S. Immigration and Customs Enforcement ("ICE") to stay her removal on humanitarian grounds. The application asserted her removal to Nigeria "would be a sure death warrant" because physicians in Nigeria are not equipped to treat her serious medical conditions, which include "late renal disease, kidney cancer and a brain tumor." Appl. for Stay 2, ECF No. 1-1. ICE denied the application.

Dr. Obioha brought this lawsuit against then-Acting Attorney General Matthew Whitaker and other federal officials[1] in January 2019, alleging ICE's brief and undated letter denying her application "violated her due process right to a meaningful decision." Compl. 2, ECF No. 1. The question before me is whether Dr. Obioha has properly invoked this Court's jurisdiction.

---

[1] Other named defendants are: Homeland Security Secretary Kirstjen Nielsen, ICE Field Office Director Brian Stokes, and Acting ICE Deputy Field Office Director Craig Fohl. Compl. 1, ECF No. 1.

1

I conclude she has not. Section 1252(g) of Title 8 of the U.S. Code bars this Court from hearing "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to . . . execute removal orders." 8 U.S.C. § 1252(g). Dr. Obioha's claim falls into this category. *See Moussa v. Jenifer*, 389 F.3d 550, 554 (6th Cir. 2004); *Candra v. Cronen*, No. 18-10823-PBS, 2019 WL 764752, at *4 (D. Mass. Feb. 21, 2019). The case, accordingly, must be dismissed.

## FACTUAL BACKGROUND

This is by no means Dr. Obioha's first encounter with the federal courts. As it happens, the Fourth Circuit has already had occasion to chronicle much of the backstory that sets up this case. *See generally Obioha v. Gonzales*, 431 F.3d 400, 403-04 (4th Cir. 2005). I will not repeat the court's account here, except to note that Dr. Obioha conceded her removability in 2000 and, after failing to voluntarily depart, was ordered removed to Nigeria. *See* 2004 BIA Decision 6, ECF No. 18-1; *Obioha*, 431 F.3d at 403-04.

In the years since, Dr. Obioha has repeatedly sought to persuade authorities that her removal to Nigeria would endanger her life. In 2005, she argued that her abusive ex-husband, with the acquiescence of Nigerian officials, would torture her for divorcing him and exposing his criminal activities. *See* April 2006 BIA Decision 3-4, ECF No. 18-2. In 2012, she argued the militant Islamist group Boko Haram might target her because of her Western education and Christian faith. 2014 BIA Decision 5, ECF No. 18-5. Her requests for relief were denied each time.

Her Form I-246 application for a stay of removal, dated August 27, 2018, echoed her previous claims that removal to Nigeria would put her life in jeopardy; this time, though, the stated concern was not a risk of violence, but a threat to her health. *See* Appl. for Stay 1. The application

asserted she was suffering from kidney cancer, late renal disease, and a brain tumor.[2] *See id.* It suggested, first, that she was not likely to receive adequate treatment in Nigeria for her renal problems and kidney cancer. *See id.* at 2. It also said there was a chance she would need a radiation treatment called CyberKnife if her brain tumor grows. *See id.* That treatment, it said, is unavailable in Nigeria, as is advanced surgical care. *See id.*

ICE denied the application. *See* Suppl., ECF No. 17. In an undated letter, Acting Deputy Field Office Director Craig Fohl wrote that he had "carefully considered" the application and "did not find a compelling reason that would warrant a favorable exercise of discretion in [Dr. Obioha's] case." *Id.* The letter did not provide any further explanation for the denial.

On October 12, 2018, ICE officers in Baltimore issued a warrant to seize Dr. Obioha and take her into custody. *See* Warrant of Removal, ECF No. 1-3. Three days later, the agency picked her up and flew her to New York en route to Nigeria. *See* Compl. ¶ 41. Her attorney swiftly filed a petition and emergency motion in the U.S. Court of Appeals for the Fourth Circuit, advising the court that she had "just learned this afternoon that Ms. Obioha will be deported tonight." Emergency Motion 2, *Obioha v. Sessions*, No. 18-2211 (4th Cir. Oct. 15, 2018), ECF No. 1-1. The court immediately granted the motion, staying the deportation "pending appeal." Oct. 15, 2018 Order, *Obioha*, No. 18-2211 (4th Cir. Oct. 15, 2018), ECF No. 6.

The case proceeded to briefing. Ultimately, on November 19, 2018, the Fourth Circuit dismissed it for lack of jurisdiction. Dismissal Order, *Obioha*, No. 18-2211 (4th Cir. Nov. 19,

---

[2] It is far from clear whether Dr. Obioha's medical condition is as dire as she represents it to be. Defendants note that Dr. Obioha, while seeking the reinstatement of her medical license, told the Maryland Board of Physicians in October 2017 that a surgery to remove one of two tumors was successful, that the tumor was found to be benign, and that the doctor had given her "a clean bill of health." *See* Defs.' Br. 2, ECF No. 18; ECF No. 18-6; Compl. ¶ 34. To be clear, though, the credibility of her assertions about her medical condition is not at issue here, as the sole question before me is whether the Court has jurisdiction over her Complaint.

3

2018), ECF No. 21. The court's brief order explained that the Department of Homeland Security's ("DHS's") denial of her application for a stay of removal was not a "final order of removal," as would be required to invoke the appellate court's jurisdiction under 8 U.S.C. § 1252(a)(1). *Id.*

This lawsuit soon followed. On February 11, 2019, nearly six weeks after Dr. Obioha filed her Complaint in this Court, her attorney moved for an emergency stay of her removal. Emergency Mot., ECF No. 9. The motion, filed shortly before close of business, stated that counsel "just learned this afternoon that Defendant intends to remove Ms. Obioha tomorrow." *Id.* ¶ 3. It warned that the consequences of removal "may indeed be fatal to the Plaintiff" in light of her alleged medical problems and repeated hospitalizations. *Id.* ¶ 4-5.

I promptly granted the motion and scheduled a telephone conference call with counsel for all parties. *See* ECF Nos. 11, 15. During the call, which was held the following day, defense counsel indicated it would seek to dismiss the case for lack of jurisdiction. Counsel further noted that Dr. Obioha's travel papers expire on March 14, 2019. *See* Defs.' Reply 1, ECF No. 22.

I directed the parties to brief the jurisdictional question on an expedited basis. *See* ECF No. 15. The issue has now been fully briefed. *See* ECF Nos. 18, 21-22. No hearing is necessary. *See* Loc. R. 105.6.

## **STANDARD OF REVIEW**

Defendants seek a dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure. A 12(b)(1) motion challenges the district court's subject matter jurisdiction, asserting, in effect, that the plaintiff lacks any "right to be in the district court at all." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The burden of establishing the court's subject matter jurisdiction rests with the plaintiff. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The district court should grant the 12(b)(1) motion "only if the material

4

jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Balfour Beatty Infrastructure, Inc. v. Mayor & City Council of Balt.*, 855 F.3d 247, 251 (4th Cir. 2017) (quoting *Evans*, 166 F.3d at 647).

## **DISCUSSION**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Hagans v. Lavine*, 415 U.S. 528, 538 (1974). Here, it is the Court's statutory jurisdiction that is contested.

Dr. Obioha's Complaint asserts the Court's power over this case rests on three statutory bases. *See* Compl. ¶ 2. First, it says the Court may exercise federal-question jurisdiction under 28 U.S.C. § 1331 pursuant to the Administrative Procedure Act. *See id.* Second, it says the Court may treat the Complaint as an action "in the nature of mandamus," under 28 U.S.C. § 1361, to compel a federal officer to perform a legal duty. Finally, it invokes the Court's power to issue declaratory judgments under 28 U.S.C. § 2201.

Dr. Obioha's counsel plainly anticipated that Defendants would challenge the Complaint on jurisdictional grounds, because the Complaint itself asserts that Section 242 of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1252, "does not deprive this Court of jurisdiction." Compl. ¶ 3. It argues, in essence, that jurisdiction must exist here because Dr. Obioha had already petitioned the Fourth Circuit to review ICE's decision rejecting her application for a stay of removal, and the Fourth Circuit dismissed her petition for lack of jurisdiction. *See id.* The implication, it would seem, is that some court must have the power to review the denial of her application, and if the Fourth Circuit does not have that power, then this Court must have it.

But this is a fallacy. As I have just stated, it is up to Congress to define the federal courts' statutory powers. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986); *Lockerty v. Phillips*, 319 U.S. 182, 187 (1943). Since 1952, Congress has elected to channel review of most deportation matters to the federal courts of appeal. *Bowrin v. U.S. Immigration & Naturalization Serv.*, 194 F.3d 483, 487 (4th Cir. 1999) (per curiam). The appellate courts' power of review, though, remains circumscribed, *see Orquera v. Ashcroft*, 357 F.3d 413, 417 (4th Cir. 2003), and it simply does not follow that any and all gaps in their jurisdiction must be filled by the district courts, *see Mapoy v. Carroll*, 185 F.3d 224, 230 (4th Cir. 1999); *Candra v. Cronen*, No. CV 18-10823-PBS, 2019 WL 764752, at *4 (D. Mass. Feb. 21, 2019).

A primary point of reference, in seeking to identify the contours of the courts' power to review immigration decisions, is 8 U.S.C. § 1252. That statute provides in part that the "sole and exclusive means of judicial review of an order of removal" is a "petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(5). This provision precludes district courts from hearing a challenge, be it direct or indirect, to an order of removal. *See S.N.C. v. Sessions*, No. 18 Civ. 7680 (LGS), 2018 WL 6175902, at *4 (S.D.N.Y. Nov. 26, 2018).

Other provisions within § 1252 further restrict judicial review of administrative actions under federal immigration laws. Most significantly, for present purposes, § 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). As one district court has explained, this tortuously drafted provision has three parts. *See Sadhvani v. Chertoff*, 460 F. Supp. 2d 114, 122 (D.D.C. 2006), *aff'd*, 279 F. App'x 9

6

(D.C. Cir. 2008). The first component, "'[e]xcept as provided in this section,' refers to the remainder of § 1252, which generally permits judicial review of removal orders only via a petition for a review in the regional court of appeals." *Id.* The second, beginning with "notwithstanding any other provision," clarifies that "aliens ordered removed cannot circumvent the exclusive judicial review in the courts of appeals by seeking relief in the district court via a petition for habeas corpus, a request for mandamus relief, or by invoking the All Writs Act." *Id.*

The final component states that, aside from petitions properly presented to a federal appellate court under § 1252(a), "no court shall have jurisdiction to hear any cause or claim . . . arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). "This provision strips all courts of jurisdiction to hear claims that fall within its ambit." *Candra*, 2019 WL 764752, at *3. The Supreme Court has clarified, though, that the jurisdictional bar under § 1252(g) is "quite specific and circumscribed." *Hatami v. Ridge*, 270 F. Supp. 2d 763, 766-67 (E.D. Va. 2003). In *Reno v. American-Arab Anti-Discrimination Committee*, the Court explained that the bar "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" 525 U.S. 471, 482 (1999) (emphasis in original).

Here, Defendants argue that Dr. Obioha's attempt to challenge ICE's denial of her application for a stay of removal runs afoul of § 1252(g) because it raises a claim "arising from the decision or action by the Attorney General to . . . execute removal orders." § 1252(g); *see* Defs.' Br. 4, ECF No. 18. The Fourth Circuit's decision in *Mapoy v. Carroll*, 185 F.3d 224 (4th Cir. 1999), supports their position. In *Mapoy*, an immigrant facing deportation to the Philippines filed in federal district court a complaint and habeas petition seeking to challenge a Board of

Immigration Appeals ("BIA") decision denying his requests to reopen his deportation proceedings and stay his removal. 185 F.3d at 226-27. The Fourth Circuit reasoned that the immigrant's motion for a stay "clearly related to the BIA's execution of a removal order" and that, consequently, his complaint and habeas petition in the district court "clearly arose from the [agency's] decision to execute a removal order" and were therefore barred under § 1252(g). *Id.* at 228.

The Sixth Circuit reached a substantially similar conclusion in *Moussa v. Jenifer*, 389 F.3d 550 (6th Cir. 2004). There, federal immigration authorities had denied a Syrian immigrant's application for a stay of deportation. 389 F.3d at 552. The immigrant filed a habeas petition in district court, arguing the agency's efforts to remove him – including its denial of his application for a stay – violated federal law and his constitutional due process rights. *See id.* at 552-53. The Sixth Circuit concluded that the agency's refusal to issue a stay of deportation was "a component of the decision to execute a deportation order" for purposes of § 1252(g) and was therefore outside of the district court's power of judicial review. *Id.* at 554.

At least two district courts have likewise concluded that they lacked statutory authority to review an agency's refusal to issue a stay of removal. *See Candra*, 2019 WL 764752, at *4 ("The decision to stay removal is part and parcel of the administrative process of executing a removal order: A decision not to grant a stay of removal is in effect a decision to execute a removal order, and vice versa."); *Albarran v. Wong*, 157 F. Supp. 3d 779, 785 (N.D. Ill. Jan. 19, 2016) ("A request for a stay of removal 'arises from' the Attorney General's decision to execute a removal order,' and is not subject to judicial review." (quoting *Sharif ex re. Sharif v. Ashcroft*, 280 F.3d 786, 787 (7th Cir. 2002)). *But see Fatty v. Nielsen*, No. C17-1535-MJP, 2018 WL 3491278 (W.D. Wash. July 20, 2018) (concluding, contrary to magistrate judge's recommendation, that § 1252(g) did not

divest the district court of jurisdiction to review a habeas petition seeking a judicial stay of removal because the claim presented a "purely legal question").

Dr. Obioha, substituting speculation for authority or sound reasoning, urges me to disregard the Fourth Circuit's decision in *Mapoy*, saying, "If considered today, the 4th Circuit would likely have ruled differently." Pl.'s Opp'n 4, ECF No. 21. She asserts that *Mapoy* is flawed, in that the court's opinion "blurred" two concepts that, in her view, are necessarily distinct – namely, "enforcing" a removal order and "executing" one. *Id.* Her argument, as best as I can discern, is that ICE's refusal to stay her removal merely *enforced* (as opposed to executed) the removal order and was therefore not within the scope of § 1252(g)'s jurisdictional bar. But if there is a distinction between these two concepts, it is a distinction without a difference.

Dr. Obioha claims to draw support for this argument from the Sixth Circuit opinion in *Casillas v. Holder*, 656 F.3d 273 (6th Cir. 2011). *See* Pl.'s Opp'n 4. *Casillas*, though, does not bolster her position. There, the appellate court concluded it lacked original jurisdiction to review an alien's claim that DHS unlawfully removed him from the United States on the basis of an invalid, outdated removal order. 656 F.3d at 274, 276. In reaching this conclusion, the court stated that the alien "cannot circumvent" the jurisdictional limitations under § 1252 "by claiming that the immigration authorities' act of *enforcing*" an allegedly outdated removal order by deporting him "amounted to a new final order of removal" subject to judicial review under § 1252(a)(5). *See id.* at 275 (emphasis in original). Such an argument, the court stated, "blurs the distinction between the enforcement of a removal order and its issuance." *Id.* Under § 1252(a)(5), an appellate court has jurisdiction only over "final 'orders' of removal, not enforcement of those orders." *Id.* (citing § 1252(a)(5), (g)).

*Casillas* addresses an *appellate* court's power under § 1252(a)(5). It does not speak to a *district* court's power to review immigration decisions, and it most certainly does not purport to differentiate between acts of enforcement and acts of execution. In any event, Dr. Obioha has not persuaded me that any distinctions one might draw between the two terms would be meaningful here. Section 1252(g), by its express terms, deprives this Court of jurisdiction to review agency decisions to "execute removal orders." In my view, the denial of Dr. Obioha's application for a stay of removal falls squarely within this category of agency decisions. It is therefore beyond this Court's jurisdiction to review.

## **CONCLUSION**

Dr. Obioha's Complaint is not within this Court's subject-matter jurisdiction. The case must therefore be dismissed.

A separate order follows.

Date: March 11, 2019

Paul W. Grimm
United States District Judge